UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| MILAGRO DEL CARMEN GAVARETE RAMIREZ, Petitioner, v. MICHAEL NESSINGER, et al., Respondents. | ) ) ) ) ) ) ) ) ) ) | C.A. No. 26-cv-259-MRD-AEM |

## ORDER

Petitioner Milagro Del Carmen Gavarete Ramirez is a native of Honduras who entered the United States over twenty years ago. ECF No. 1 ¶¶ 12, 20. She was ordered removed in absentia on April 6, 2006. ECF No. 4 at 2; ECF No. 4-2. Over the next twenty years, the Petitioner enjoyed a productive life with her husband and their two children. ECF No. 6 at 1–2. The family lives in North Kingstown, Rhode Island and owns and operates a chain of several "Caliente Mexican Grill" restaurants located both in Rhode Island and Massachusetts, with the prospect of opening two more locations in the near future. *Id.*

Since June 2025, the Petitioner has been involved in a process for her and her husband to receive a T-Nonimmigrant Visa (or an I-914).[1] This application process, and the Petitioner's life, were then interrupted on April 28, 2026, when DHS/ICE arrested the Petitioner upon her arrival at a required biometrics appointment with DHS/ICE at their Warwick, Rhode Island field office. ECF No. 1 ¶¶ 1–2. The biometrics appointment is mandatory of individuals involved in the I-914 application process such as the Petitioner. ECF No. 6 at 5.

Now before the Court is the Petitioner's petition for writ of habeas corpus in which she argues that her arrest and continued detention violates her right to due process under the Fifth Amendment and that ICE's "change in practice to seek

---

[1] Victims of human trafficking are eligible to apply for this kind of visa and the victim's spouse may be a derivative applicant. While the merits of the I-914 application are not for this Court's consideration, to provide context, the basis of Petitioner's application is derivative to that of her husband's, who for years was forced to work over 90 hours per week (8:00am–4:00am) in a restaurant. He was required to live in an attic above the restaurant. ECF No. 6 at 1–2.

detention and removal without even a bona fide review violates the [Administrative Procedures Act]." *Id.* at 6–12. The Respondents contend that this Court lacks jurisdiction over the habeas petition since the Petitioner is confined in New Hampshire and the Respondents contend the Petitioner is appropriately detained under 8 U.S.C. § 1231(a)(6). ECF No. 4 at 1.

Generally, jurisdiction "for core habeas petitions challenging present physical confinement … lies in only one district: the district of confinement." *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004). The Supreme Court has also explained, however, that this rule is not without exception and that when "a prisoner is held in an undisclosed location by an unknown custodian, it is impossible to apply the immediate custodian or district of confinement rules." *Id.* at 450 n.18. This is critical "because a detainee *must always have an available forum for a habeas petition*, even if the government doesn't disclose their location." *Suri v. Trump*, No. 25-1560, 2025 WL 1806692, at *5 (4th Cir. July 1, 2025) (emphasis added); *see also Cabral Moreta v. Wesling*, No. 1:26-cv-10868-IT, 2026 WL 632702, at *2 (D. Mass. Mar. 5, 2026).

Based on the specific facts surrounding this Petitioner's arrest, the Court finds it appropriate to exercise jurisdiction because, while she was already en route to New Hampshire at the time the habeas petition was filed, her location was unknown to her Counsel until the next day. ECF No. 4 at 1 n.1. The Petitioner was initially detained in a field office in Warwick, Rhode Island and claims she was not provided with a phone call prior to being transferred to New Hampshire. ECF No. 6 at 3. Further, the Petitioner's location was not (and in fact is still not) available through the ICE detainee locator. While the Respondents' attorney notified the Petitioner's counsel of her location on April 29, it was too late because by then the habeas petition had been filed in the District of Rhode Island. Concluding that the Petitioner was unable to be located at the time the instant petition for writ of habeas corpus was filed is the basis for the Court's decision to exercise and retain jurisdiction over the petition. *See Padilla*, 542 U.S. at 450 n.18.

The Petitioner also asks this Court to release her from confinement based on the Respondents' decision to "interfere with her legal right to pursue a T Visa." ECF No. 5 at 3–6. The Respondents argue that the Petitioner is subject to a final order of removal under 8 U.S.C. § 1231(a)(6) which governs detention of individuals subject to a final order of removal. ECF No. 4 at 4. While the Respondents are correct that the Petitioner is subject to a final order of removal under 8 U.S.C. § 1231(a)(6), that by itself does not require the Petitioner's detention, especially factoring in her active attempt at seeking legal status in this country, as evidenced by her active pursuit of a T-Visa. This is all the more true given that the Fifth Amendment entitles noncitizens to due process of the law in removal proceedings. *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

This same issue was addressed in *Portillo Vasquez v. Turek*, 2:25-cv-741, 2025 WL 2733631, at \*5–\*7 (D.Vt. Sept. 25, 2025). Relying on Supreme Court precedent, that Court explained that "[a]fter a petitioner has identified a proper[t]y or liberty interest, the court must determine whether constitutionally sufficient process has been provided." *Id.* at \*5 (citing *Mathews v. Eldridge*, 424 U.S. 319, 332–33 (1976). To make this determination, the Court applies the three-factor balancing test set out in *Mathews*:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335. When applied to the facts of this case, this Court has little trouble concluding, like the court in *Portillo Vasquez*, that each of these factors weighs in favor of granting the Petitioner's habeas petition so she can continue pressing her T-Visa application.[2]

Before weighing the *Mathews v. Eldridge* factors, the Court makes an observation about the provisions in 8 C.F.R. § 241, which deals with "Apprehension and Detention of Aliens Ordered Removed." Here, the Respondents concede that the "Petitioner is outside the 90-day removal period during which the government 'shall detain' her." ECF No. 4 at 4 (citing 8 U.S.C. § 1231(a)(2)(A)). This concession means § 241.3 is inapplicable to the Petitioner since it applies to "[d]etention of aliens during removal period." Sections 241.4 and 241.5 are similarly inapplicable to the Petitioner because they govern "[c]ontinued detention of inadmissible, criminal, and other aliens beyond the removal period" and "[c]onditions of release after removal period[,]" respectively. Because these regulations cannot apply given this Petitioner's circumstances and because the Respondents have failed to identify another regulation that permits her detention, it appears to this Court that the Petitioner occupies a gray regulatory area. She was never detained on this warrant nor was she ever subject to an Order of Supervision ("OSUP"). The cited provisions do, however, provide guidance to the Court on how to proceed. The regulations explicitly contemplate the application of due process. *See* 8 C.F.R. § 241.4(d) (requiring a copy of any custody determination to be provided to the detained person, and allowing a person to be released if it is demonstrated that the person does not pose a danger to the community or is not a flight risk); *see also* 8 C.F.R. § 241.8 (requiring notice to be

---

[2] The Court notes that the Respondents failed to engage with the balancing test outlined in *Mathews*.

sent to an individual subject to removal prior to reinstating the prior order of removal).  With that in mind, the Court moves on to the balancing test.

First, the Court finds that the Petitioner has a protected liberty interest in her pending T-Visa application.  While district courts across the country are split on this issue, this Court sides with those who "have found a cognizable interest in noncitizens remaining physically present in the United States when they have a pending T Nonimmigrant application."  *Portillo Vasquez*, 2025 WL 2733631, at \*5 (collecting cases).  As the Petitioner explains, "the biometrics appointment that Petitioner attempted to attend is necessary to adjudicate the waiver application. As a general matter, USCIS would not grant an application, including a waiver, *until they were able to confirm the biometrics for an applicant.*"  ECF No. 6 at 5.  It is clear to this Court that a Petitioner who avails themselves of a legal process offered by USCIS should be entitled to complete that process.  That did not occur here because DHS/ICE used this very process as a guise to detain the Petitioner.[3]

Next, the Court considers "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards."  *Mathews*, 424 U.S. at 335.  This factor, like the first, weighs in the Petitioner's favor.  It is undisputed that the Petitioner's arrest frustrated her ability to access mandatory steps in the T-Visa application process.  *See* ECF No. 4 at 3 ("ICE arrested Petitioner when she attended an appointment with USCIS to provide biometric information.").  At the March 14 hearing, the Respondents argued that the Petitioner's T-Visa could be processed while she is in custody. But, in the next breath, they then relayed that DHS is prepared to deport the Petitioner back to Honduras.  This Court views the Respondents' offer to process the Petitioner's T-Visa application while she remains in custody with a healthy dose of skepticism.  Absent from the record is any sort of a declaration from any of the Respondents in which they assure the Court that they will continue to process the application before effectuating the Petitioner's removal. Respondents have also provided no indication of how they could facilitate the Petitioner's T-Visa process while she is in custody or removed to Honduras.

The last *Mathews* factor compels this Court to consider the Respondents' interests. Again, doing so weighs in favor of the Petitioner.  Like the *Portillo Vasquez* court, this Court finds that granting the Petitioner's requested relief—releasing her so she can continue pursuing legal status through a T-Visa—"would preclude any erroneous deprivation of her liberty interests at a minimal cost to the government."

---

[3] Importantly, at the May 14, 2026 hearing, the Respondents represented to this Court that plans are progressing towards their intention to remove the Petitioner to Honduras prior to the completion of the visa application process.  The Court views this as an admission that DHS/ICE are actively denying the Petitioner the opportunity to avail herself of a legitimate immigration process.

2025 WL 2733631, at *6.  Further, the Respondents have failed to suggest *any* burden on the Government if the Petitioner's petition for habeas corpus were granted. Therefore, the Court, without hesitation, finds that the Petitioner's personal liberty far outweighs any burden to the Government.

Having applied the balancing test outlined by the Supreme Court in *Mathews*, the Court finds that each factor weighs in favor of granting the Petitioner's requested relief.  "When the requirements of [the biometrics appointment] are used to prevent the person from accessing and applying for [a T-Visa], there is a chilling effect on due process."  *Portillo Vasquez*, 2025 WL 2733631, at *7.  Accordingly, the petition for writ of habeas corpus is granted.[4]

Based on the above, the Court Orders the following:

1. The Petitioner's petition for writ of habeas corpus (ECF No. 1) is GRANTED;
2. The Petitioner is to be released TODAY (May 14, 2026) either from the place of her confinement in New Hampshire or the ICE Field Office in Burlington, MA;[5]
3. All of Petitioner's property is to be RETURNED;
4. The Respondents SHALL NOT interfere with the Petitioner's ability to pursue her pending I-914 and SHALL continue processing the request in the normal course;
5. The parties shall submit a status report in thirty days explaining the status of the Petitioner's I-914 and any other proceedings related to her immigration status.

IT IS SO ORDERED.

Melissa R. DuBose
United States District Judge

05/14/2026

---

[4] The Court need not decide the Petitioner's APA claim because the due process claim resolves the issues in the case.

[5] At the May 14 hearing, the Court explicitly notified the Respondents that the petition would be granted and an order would enter later in the day.  The Court also requested that the Respondents immediately begin processing the Petitioner's release.